# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SAVE OUR BIG SCRUB, INC., SIERRA CLUB, FLORIDA NATIVE PLANT SOCIETY, INC., AUDUBON SOCIETY OF THE EVERGLADES,**

        **Plaintiffs,**

**-vs-**                                           **Case No. 6:04-cv-349-Orl-28KRS**

**GALE NORTON, SECRETARY, UNITED STATES DEPARTMENT OF THE INTERIOR, UNITED STATES FISH AND WILDLIFE SERVICE, AN ADMINISTRATIVE AGENCY OF THE UNITED STATES DEPARTMENT OF THE INTERIOR,**

        **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

    This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**    **MOTION TO INTERVENE (Doc. No. 16)**
>
> **FILED:**       **July 15, 2004**
>
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

    This matter was referred to me by the presiding district judge, the Honorable John Antoon II, for issuance of a report and recommendation.

**I.     BACKGROUND.**

The U.S. Fish and Wildlife Service ("FWS") listed the Florida scrub-jay, a bird, as a threatened species on June 3, 1987. *See* 52 Fed. Reg. 20715 (June 3, 1987). As of the date of the ruling, FWS noted that 80% of the scrub-jays lived in Brevard, Lake, Marion and Putnam counties in Florida. *Id.* at 20717. FWS stated that it was not prudent at that time to designate a critical habitat[1] for the scrub-jay, noting, among other things, that many of the remaining scrub-jays were found on federal land including the Merritt Island National Wildlife Refuge/Kennedy Space Center, the Cape Canaveral Air Force Station, the Avon Park Air Force Range, and the Ocala National Forest *Id.* 20717-18.

In March and April 2002, Save Our Big Scrub, Inc. and other organizations petitioned the Department of the Interior and the U.S. Fish and Wildlife Service ("FWS") to list the Florida scrub-jay as an endangered species pursuant to the Endangered Species Act, 16 U.S.C. § 1531, *et seq.* (hereinafter the "Act"). They also sought, among other things, to have FWS revise its determination that designating a critical habitat for the scrub-jay was not prudent and to issue a rule designating a critical habitat for the scrub-jay. Doc. No. 1, exs. 4, 5.

The Act sets forth time frames within which FWS was to act on the petition. *See* 16 U.S.C. § 1533(a)(3)(A), (D). The FWS advised the petitioners that it was unable to make the requested findings because of a lack of funding. Doc. No. 1, exs. 5, 6.

On March 15, 2004, the Plaintiffs, Save Our Big Scrub, Inc., Sierra Club, Florida Native Plant Society, Inc., and Audubon Society of the Everglades (collectively "Plaintiffs"), filed a

---

[1] A "critical habitat" under the Endangered Species Act basically refers to a geographical area set aside as a habitat for an endangered species. 16 U.S.C. § 1532(5)(A)-(C).

complaint against the Defendants, the U.S. Department of the Interior and the FWS, essentially seeking injunctive relief to compel the Defendants to issue findings on the petitions to designate the scrub-jay an endangered species and to designate its critical habitat.  The Plaintiffs' main contention is that the Defendants violated the Act by failing to make these findings within the time limits of the Act.  Doc. No. 1, at 5-7.  On May 21, 2004, the Defendants filed an Answer denying each of the Plaintiffs' allegations.  Doc. No. 12.

The party moving to intervene, Citizens for Resources Stewardship of Brevard, Inc. ("Citizens"), is a non-profit organization that seeks to protect the rights of citizens and property owners in Brevard County, Florida who, Citizens alleges, have a vital stake in the outcome of this case.  Doc. No. 27, at 2.  Citizens seeks to support the Defendants' position that they should not be required to act on the petitions because funds are not available to do so.  They contend that compelling the Defendants to act without sufficient funding could result in the Defendants' failure to consider the economic impact of designation of areas as a critical habitat for the scrub-jay. Subsequently, Citizens filed a "Complaint in Intervention," in which it seeks an order upholding the Defendants' decision that it is not practicable to act on the petitions and to enjoin the Defendants from acting on the petition before they have the financial ability to consider the impacts of designation of a critical habitat for the scrub-jay.  Doc. No. 27.

On July 23, 2004, the Plaintiffs filed a response opposing Citizens' intervention, on the grounds that Citizens' interests are not sufficiently tied to the narrow issues of the underlying case to merit intervention.  Doc. No. 18.  On August 31, 2004, the Plaintiffs filed a response to the "Complaint in Intervention," which restates the arguments set out in their original opposition to Citizens' motion to intervene.  Doc. No. 28.

**II.      STANDARD OF REVIEW.**

The procedure of intervention allows third parties to inject themselves into lawsuits in which they have an interest. There are two types of intervention: (1) intervention as of right; and (2) permissive intervention. Fed. R. Civ. P. 24 ("Rule 24").

First, a party has a right to intervene in a lawsuit when either a federal statute grants an absolute right to intervene, or the party has an interest in the outcome of the case and no existing parties adequately represent the intervenor's interest. Fed. R. Civ. P. 24(a). The United States Court of Appeals for the Eleventh Circuit has expressed this standard as a four-part test:

> A party seeking to intervene as of right under Rule 24(a)(2) must show that: (1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit.

*Stone v. First Union Corp.*, 371 F.3d 1305, 1309 (11th Cir. 2004) (quoting *Worlds v. Dep't of Health and Rehabilitative Serv.*, 929 F.2d 591, 593 (11th Cir. 1989)).

Second, a court may, in its discretion, permissively allow a party to intervene in certain circumstances. Fed. R. Civ. P. 24(b). Permissive intervention is appropriate when: (1) a federal statute confers a conditional right to intervene; or (2) an applicant's claim or defense and the main action have a question of law or fact in common. *Id.* In addition, courts "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties" when considering a motion for permissive intervention. *Id.* Both sorts of intervention, intervention of right and permissive intervention, are involved in this case.

**IV.   ANALYSIS.**

Citizens contends that the Court should grant its motion to intervene both because it has a right to intervene, and, in the alternative, because allowing permissive intervention would be appropriate in this case. The Plaintiffs counter that Citizens does not meet any of the requirements for either sort of intervention. In the following analysis, I consider both types of intervention, and their applicability to this case.

*A.   Preliminary Issues.*

As a preliminary matter, the parties have raised two minor issues that must be resolved. First, the Plaintiffs alleged that Citizens' original motion to intervene should fail because it is not, technically, a "pleading" as required under Rule 24. Doc. No. 18, at 3-4. Rule 24 directs potential intervenors to file a "motion to intervene . . . accompanied by a pleading setting forth the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). In response, Citizens filed a "Complaint in Intervention." Doc. No. 27. Because Citizens cured the defect about which the Plaintiffs complain, I find that this issue is moot.

Second, Citizens states that the Act confers an absolute right to intervene on parties with an interest in a case brought under the Act. To the contrary, the Act only addresses the commencement of civil suits, it does not confer any intervention rights on private citizens. 16 U.S.C. § 1540(g).[2]  Courts generally do not interpret statutes as creating an unconditional right to intervene, unless the statue clearly does so on its face. *See* CHARLES ALAN WRIGHT, ARTHUR R.

---

[2] In contrast, the Clean Water Act does confer this sort of right to intervene with the language, "any citizen may intervene as a matter of right." 33 U.S.C. § 1365(b)(1)(B); *United States v. Metro. St. Louis Sewer Dist.*, 874 F.2d 588, 589 (8th Cir. 1989). No such language is present in the Act.

MILLER & MARY KAY KANE, 7C FEDERAL PRACTICE AND PROCEDURE § 1906 (2d ed. 1986 & Supp. 2004) (providing a comprehensive listing of the federal statutes that confer absolute rights to intervene). Thus, I find that Citizens' contention–that the Act confers an absolute right to intervene–is meritless.

   *B.   Intervention of Right.*

As mentioned above, there are four criteria that a prospective intervenor must meet in order to intervene as of right. First, the prospective intervenor's motion to intervene must be timely. Fed. R. Civ. P. 24(a). The Plaintiffs acknowledge that Citizens motion to intervene was timely in this case.

Next, an intervenor must have an interest relating to the property or transaction that is the subject of the underlying lawsuit.[3] *Id.*; *Stone*, 371 F.3d at 1309. "[A] party is entitled to intervention as a matter of right if the party's interest in the subject matter of the litigation is direct, substantial and legally protectable." *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1249 (11th Cir. 2002). An intervenor's interest is only "legally protectable" if the intervenor has a particularized stake in the case, rather than a general grievance. *Chiles v. Thornburgh*, 865 F.2d 1197, 1212 (11th Cir. 1989).

For example, in *Manasota-88, Inc. v. Tidwell*, a non-profit association of power generation facilities attempted to intervene in a lawsuit that an environmental public interest organization

---

[3] Rule 24 and cases discussing intervention articulate a four-part test to govern intervention of right. However, as a practical matter, the second and third requirements (that the prospective intervenor have an interest in the underlying case, and that the interest be legally protectable, respectively) generally bleed together in courts' analyses of motions to intervene. *See, e.g.*, *Stone*, 371 F.3d at 1309; *Chiles*, 865 F.2d at 122. In this order, I likewise do not separately consider the issues of whether Citizens has an interest in this case, and whether that interest is likely to be impaired by the disposition of this case.

brought against the U.S. Environmental Protection Agency ("EPA"). 896 F.2d 1318, 1319-20 (11th Cir. 1990). In the underlying action, the public interest organization sought to force the agency to identify bodies of water that did not meet regulatory standards for pollution, which it referred to as "noncompliance water bodies," and force the agency to set waste limitations for the bodies it identified. *Id.* The interest that the power generation facilities sought to assert was that, as parties who discharged waste into the noncompliance water bodies, they could be affected by the designations and waste limits that the EPA might establish. *Id.*

The court rejected the request for intervention, calling the proposed intervenor's interest a "generalized grievance." *Id.* at 1322. It noted that the intervenor admitted that its members did not discharge into two areas in dispute, wetlands and national parks. With respect to the remaining noncompliance water bodies, the court observed that until these water bodies were identified, the intervenor could not establish that any of its members discharged waste into these noncompliance water bodies.

In contrast, in *Chiles v. Thornburgh*, the plaintiffs sought to compel the federal government to operate the Krome Detention Center ("Krome") in compliance with federal statutes and regulations that limited the number of people that could be housed in the facility and that restricted its use to that of a minimum security, short term facility. 865 F.2d 1197, 1214 (11th Cir. 1989). Detainees held at Krome, among others, sought to intervene in the case. The court found that the detainees had a direct, substantial and legally protected interest in the lawsuit because it dealt with their conditions of confinement. Further, it reasoned that the outcome of the underlying case could have a *stare decisis* effect on any subsequent actions that the aliens might bring if the lawsuit were decided in favor of the defendants. *Id.*

Applying this intervention standard to the present case, I find that Citizens' interest in the underlying litigation is analogous to the position of the proposed intervenor in *Manasota-88, Inc.* Because there has not been a critical habitat designation, Citizens cannot establish that any of its members will be adversely effected by the designation.

The final requirement that Rule 24 imposes is that the potential intervenor's interest must be inadequately represented by existing parties to the lawsuit. Fed. R. Civ. P. 24(a). "Representation is adequate 'if no collusion is shown between the representative and an opposing party, if the representative does not have or represent an interest adverse to the proposed intervenor, and if the representative does not fail in the fulfillment of his duty.'" *Meek v. Metro. Dade County*, 985 F.2d 1471, 1478 (11th Cir. 1993) (quoting *FSLIC v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 215 (11th Cir. 1993)). In the Eleventh Circuit, courts "presume that a proposed intervenor's interest is adequately represented when an existing party pursues the same ultimate objective as the party seeking intervention." *Georgia*, 19 F.3d at 1394 (quoting *Falls Chase Special Taxing Dist.*, 983 F.2d at 215).

In the present case, Citizens contends that its interests "are not adequately represented by the government's interests, as [Citizens] will suffer economic and other impacts unique to [it]." Doc. No. 16, ¶ 11. However, Citizens incorrectly frames the interests involved in the underlying lawsuit. If the Plaintiffs prevail, there will be no immediate and adverse economic or other consequence to Citizens. Rather, the matter will be returned to the government agencies to make findings, which include consideration of the economic impacts of such findings. The government defendants adequately represent the question of whether requiring such findings are appropriate

and fiscally feasible. Thus, Citizens' position is adequately represented by the Defendants in this case.

  C. *Permissive Intervention.*

Courts have the discretion to allow a party to intervene in cases when the party's claim and the main action have a question of law or fact in common, or a statute confers a conditional right to intervene. Fed. R. Civ. P. 24(b). When determining whether to permit this sort of intervention, courts must take into account whether the intervention will cause undue delay or prejudice to the original parties. *Id.* "It is wholly discretionary with the court whether to allow intervention under Rule 24(b)[;] and even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention." *Purcell v. Bankatlantic Fin. Corp.*, 85 F.3d 1508, 1513 (11th Cir. 1996). Furthermore, if a prospective intervenor could protect its interests in a separate action, it is less likely that a court will abuse its discretion if it refuses to permit that party to intervene–particularly where the court has reason to think that allowing intervention would make the case more cumbersome. *Worlds*, 929 F.2d at 595 n.20.

In the present case, the claim Citizens asserts is inapposite to the underlying case in that Citizens' purpose appears to be to persuade the FWS not to designate the scrub-jay as an endangered species and not to designate scrub-jay critical habitat in Brevard County, Florida. However, this litigation is not an appropriate venue for a party to influence the FWS' fact-finding. The Act provides procedures under which interested parties may request public hearings and submit information in order to advocate a position with respect to the designation of endangered species. 16 U.S.C. §§ 1533(b)(5)(E), 1533(b)(6)(B)(I). Moreover, the Act provides that parties

may file civil suits against the FWS to enforce the Act's provisions–which would include a suit against the FWS for failing to consider the items (*e.g.*, economic effects) that the Act requires FWS to consider. 16 U.S.C. § 1540(g)(1)(A). Thus, there are other avenues available through which Citizens could protect its interests.

Therefore, I submit that this Court should decline to permit Citizens to intervene because its intervention would likely make this litigation cumbersome, and because other methods are available through which Citizens could seek the same relief it hopes to obtain in the present case. *Worlds*, 929 F.2d at 595 n.20.

### V.    RECOMMENDATION.

Based on the foregoing, I respectfully recommend that the Motion to Intervene (Doc. No. 16) be DENIED.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on October 20, 2004.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Courtroom Deputy