# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SAVE OUR BIG SCRUB, INC., SIERRA CLUB, FLORIDA NATIVE PLANT SOCIETY, INC., AUDUBON SOCIETY OF THE EVERGLADES,**

          **Plaintiffs,**

**-vs-**                                                            **Case No. 6:04-cv-349-Orl-28KRS**

**GALE NORTON, SECRETARY, UNITED STATES DEPARTMENT OF THE INTERIOR, UNITED STATES FISH AND WILDLIFE SERVICE, AN ADMINISTRATIVE AGENCY OF THE UNITED STATES DEPARTMENT OF THE INTERIOR,**

          **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**    **PETITION FOR ATTORNEYS' FEES AND COSTS (Doc. No. 62)**
>
> **FILED:**      **February 18, 2005**
>
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part.

**I.**     **PROCEDURAL HISTORY.**

On March 15, 2004, the plaintiffs, Save Our Big Scrub, Inc., Sierra Club, Florida Native Plant Society, Inc. (Plant Society), and Audubon Society of the Everglades, filed a complaint seeking to compel the defendant, the U.S. Fish and Wildlife Service (FWS), which is part of the U.S. Department of the Interior, to issue findings regarding the habitat of a particular species of bird native to central Florida, the Florida scrub-jay. Doc. No. 1. On September 15, 2004, the Honorable John Antoon, II, the presiding district judge, ordered the parties to mediation. Doc. No. 37. In the course of mediation, the parties reached a settlement and filed a stipulated settlement agreement on December 14, 2004. Doc. No. 59. Under the terms of the settlement agreement, FWS agreed to make the 90-day finding. FWS further agreed, depending on the outcome of the 90-day finding, to make the appropriate twelve-month finding and, if appropriate, a critical habitat determination. Doc. No. 59 at 3. Judge Antoon entered an order ratifying the settlement agreement and dismissing this case on December 20, 2004. Doc. No. 61.

In the settlement agreement, the parties also agreed that the plaintiffs in this case were "prevailing parties" for purposes of determining entitlement to attorneys' fees under the Endangered Species Act (ESA). Doc. No. 59 at 5. Plaintiffs Save Our Big Scrub, Inc. and Audobon Society of the Everglades reached a settlement with FWS regarding attorneys' fees and other costs. Doc. No. 63. Plaintiffs Sierra Club and Plant Society, on the other hand, filed the present motion for attorneys' fees and costs. Doc. No. 62. In support of their motion, Sierra Club and Plant Society filed as exhibits the affidavits and billing records of their attorneys. *Id.* exs. 1-5.[1] In addition, they filed affidavits to support the number of hours and hourly rates billed by their

---

[1] In their fee petition, Sierra Club and Plant Society indicated that they intended to seek additional attorneys' fees for 30 hours of time spent working on the fee petition itself. Doc. No. 62 at 12. On March 18, 2005, Sierra Club and Plant Society filed a notice that they spent only 19.5 hours of time on the fee petition, rather than the 30 hours that they anticipated in their petition. Doc. No. 67. Because the notice of additional time is not supported by a itemization of the work performed, I cannot assess whether the time was reasonably expended. Therefore, I do not consider any hours worked in addition to those set forth in the original fee petition.

counsel. *Id.* exs. 6-8.  In one of these affidavits, Jay Tutchton, an attorney who specializes in "environmental and natural resource litigation," averred that the hours incurred by the attorneys for Sierra Club and Plant society were reasonable in light of the nature and complexity of this case. *Id.* ex. 6 ¶¶ 1, 4.  FWS offered no contrary expert opinion.

On March 3, 2005, FWS filed a response challenging both the number of hours Sierra Club and Plant Society's attorneys billed and the amount of costs that they seek.  Doc. No. 64.

Judge Antoon referred this motion to me for issuance of a report and recommendation.

## II.    STATEMENT OF FACTS.

FWS listed the Florida scrub-jay as a threatened species on June 3, 1987. *See* 52 Fed. Reg. 20715 (June 3, 1987).  As of the date of the designation, FWS noted that 80% of the scrub-jays lived in Brevard, Lake, Marion, and Putnam counties in Florida. *Id.* at 20717.  FWS stated that it was not prudent at that time to designate a critical habitat[2] for the scrub-jay, noting, among other things, that many of the remaining scrub-jays were found on federal land including the Merritt Island National Wildlife Refuge/Kennedy Space Center, the Cape Canaveral Air Force Station, the Avon Park Air Force Range, and the Ocala National Forest. *Id.* 20717-18.

In March and April 2002, Save Our Big Scrub, Inc. and other organizations petitioned FWS to list the Florida scrub-jay as an endangered species pursuant to the ESA.  They also sought, among other things, to have FWS revise its determination that designating a critical habitat for the scrub-jay was not prudent and to issue a rule designating a critical habitat for the scrub-jay.  Doc. No. 1 exs. 4, 5.

The ESA sets forth time frames within which FWS was to act on the petition. *See* 16 U.S.C. § 1533(a)(3)(A), (D).  FWS advised the petitioners that it was unable to make the requested

---

[2] A "critical habitat" under the Endangered Species Act basically refers to a geographical area set aside as a habitat for an endangered species.  16 U.S.C. § 1532(5)(A)-(C).

-3-

findings because of a lack of funding. Doc. No. 1 exs. 5, 6. The plaintiffs filed this lawsuit in order to compel FWS to make the required findings regarding the scrub-jay which, under the terms of the settlement agreement, FWS has agreed to do.

**III.   STANDARD OF REVIEW.**

The ESA provides that the Court "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." 16 U.S.C. § 1540(g)(4). In order to determine whether fees are "appropriate" in particular cases, courts apply a standard known as the "catalyst test," pursuant to which fees are properly awarded when the following conditions are met: "(1) the defendant takes an action materially altering the legal relationship between the parties such that the plaintiffs achieve a significant goal of their suit; (2) their suit was the catalyst for such action; and (3) the plaintiffs' claim was colorable and enjoyed reasonable likelihood of success on the merits." *Loggerhead Turtle v. County Council*, 307 F.3d 1318, 1321 (11th Cir. 2002).[3] After making the appropriateness determination, courts consider the amount of legal expenses for which plaintiffs should be compensated. *See e.g., Loggerhead Turtle v. County Council*, No. 6:95-CV-587-ORL22DAB, 2001 WL 34098649, at *6 (M.D. Fla. Feb. 12, 2001), *overruled on other grounds*, 307 F.3d 1318 (11th Cir. 2002); *Florida Key Deer v. Bd. of County Comm'rs*, 772 F. Supp. 601, 603 (S.D. Fla. 1991) (applying general attorneys' fee standard in the Eleventh Circuit to ESA fee award).

In the Eleventh Circuit, courts calculate a reasonable attorneys' fee by multiplying the reasonable hourly rate by the reasonable number of hours to arrive at the lodestar. *Norman v.*

---

[3] The *Loggerhead Turtle* court acknowledged that a then-recent Supreme Court case had abandoned the catalyst test to determine entitlement to attorneys' fees pursuant to the Fair Housing Amendments Act (FHAA). *Loggerhead Turtle*, 307 F.3d at 1325-26 (discussing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't Health & Human Res.*, 532 U.S. 598 (2001)). The court declined to extend this rejection of the catalyst test to the ESA, because the fee-shifting language of the ESA was different from that of the FHAA and better-suited to the catalyst test. *Id.*

*Hous. Auth.*, 836 F.2d 1292, 1302 (11th Cir. 1988); *O'Rear v. Am. Family Life Assurance Co.*, 144 F.R.D. 410, 414 (M.D. Fla. 1992). The court may then adjust the lodestar amount, as necessary, based on the results the movant's attorney obtained in the case. *Norman*, 836 F.2d at 1302. In *Norman*, the Eleventh Circuit articulated the factors to be considered in determining reasonable fees under the lodestar method.[4]

The "'fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates.'" *Am. Civil Liberties Union v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (quoting *Norman*, 836 F.2d at 1303). It is the applicant's burden to produce satisfactory evidence that the requested rate meets prevailing market rates. "Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work. . . . [S]atisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits. Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate." *Norman*, 836 F.2d at 1299 (internal citations omitted).

It is incumbent on the fee applicant to submit evidence that supports the number of hours worked and the rate sought. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "[F]ee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. If the applicant submits inadequate documentation to support its request for fees, a court may reduce the award, based on its own experience without further briefing or an evidentiary hearing. *Id.*

---

[4] These include twelve factors enumerated in the case of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The twelve *Johnson* factors are as follows: time and labor required; novelty and difficulty of the questions; skill requisite to perform the legal service properly; preclusion of other employment by the attorney due to the acceptance of the case; customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; amount involved and results obtained; experience, reputation and ability of the attorneys; "undesirability" of the case; nature and length of the professional relationship with the client; and awards in similar cases. *Id.* at 717-19.

## IV. ANALYSIS.

To resolve a motion for attorneys' fees and costs, courts engage in a two-part analysis. First, they determine whether the plaintiffs are entitled to attorneys' fees and costs, and second, if they are so entitled, courts determine the amounts to which they are entitled. The first part is simple in the present case. FWS agreed that all of the plaintiffs in this case were eligible for attorneys' fees. Doc. No. 59. In the absence of objection, I find that the plaintiffs are entitled to their reasonable attorneys' fees and costs.[5]

Having determined that the plaintiffs are entitled to attorneys' fees and costs, the Court must determine their amounts. The expenses for which Sierra Club and Plant Society seek compensation are largely attorneys' fees, regarding which the Court must consider the reasonableness of both the hourly rate charged and the number of hours sought. There are three attorneys and a number of law student interns who worked on behalf of Sierra Club and Plant Society in this case as follows: (1) James R. May, Esq. at $270.00 per hour; (2) James S. Stuhltrager, Esq. at $190.00 per hour; (3) Jennifer A. Murphy, Esq. at $165.00 per hour; and (4) interns at $85.00 per hour. Doc. No. 62 at 7. In terms of hours, Sierra Club and Plant Society seek the following amounts: (1) 79.5 hours for a total of $21,465.00 for May; (2) 51.25 hours for a total of $9,737.50 for Stuhltrager; (3) 79.85 hours for a total of $13,175.25 for Murphy; and (4) 28.5 hours for a total of $2,422.50 for interns. *Id.* at 5, 11. The total amount of attorneys' fees sought is $46,800.25. *Id.* at 11. The time sheets submitted by Sierra Club and Plant Society indicate that all of the attorneys and interns worked more hours on this case than are sought in the fee petition.

---

[5] Specifically, FWS agreed that the plaintiffs were "prevailing parties." Therefore, the plaintiffs are entitled to their reasonable attorneys' fees and costs. *See Loggerhead Turtle*, 307 F.3d at 1323-26 (explaining that the success a plaintiff must realize to be entitled to ESA attorneys' fees under the "catalyst test" is less than that required under the "prevailing party" standard found in other fee-shifting statutes).

FWS does not object to the hourly rates Sierra Club and Plant Society seek and, in the absence of objection, I find that they are reasonable. Doc. No. 64 at 5.

FWS does, however, challenge the number of hours and the costs for which Sierra Club and Plant Society seek compensation. *Id.* The following analysis considers each objection. *See Norman*, 836 F.2d at 1301 (courts need only consider objections to fees that are "reasonably precise").

1. *Time Spent Negotiating Client Retainer.*

FWS seeks a reduction of 4.25 hours of May's time and 8.75 hours of Stuhltrager's time spent negotiating the retainer agreement pursuant to which May was hired to work on this case. Doc. No. 64 at 6. The United States Court of Appeals for the Eleventh Circuit has explained that a calculation of reasonable attorneys' fees only includes time expended on the litigation. *Barnes*, 168 F.3d at 435 (holding that time spent soliciting plaintiffs was not expended "on the litigation"). In the present case, I have found no binding or persuasive authority analyzing retainer agreements and the like under the ESA's fee-shifting provision. I find that the Eleventh Circuit's holding in *Barnes* to be the most instructive authority on this issue. *Id.*; *see also Role Models Amer. Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004) ( "The government should not have to pay for administrative matters relating to the formal relationship between [the party] and its attorneys.").

Accordingly, I find that 4.25 hours of May's time should be deducted for time spent working on the retainer agreement.[6] I find that only 8.25 hours' worth of time entries reflect time that Stuhltrager spent working on the retainer agreement and should be deducted.[7]

2. *Time Spent Opposing Intervention.*

---

[6] This figure includes the following time entries: (1) "Discuss retainer agreements with Jim Stuhltrager," 0.50 hours on 12/17/2003; (2) "Discuss retainer agreement with Sierra Club," 1.00 hours on 12/29/2003; (3) "Read response from SC. Discuss with Jim Stuhltrager," 0.25 hours on 1/2/2004; (4) "Talk with Jim Stuhltrager about retainer agreement," 0.75 hours on 1/5/2004; (5) "Review draft retainer," 0.75 hours on 2/9/2004; (6) "Discuss retainer with co-counsel," 0.50 hours on 2/19/2004; and (7) "Worked on retainer issues with Sierra Club," 0.50 hours on 2/20/2004. Doc. No. 62 ex. 1.

[7] This figure includes the following time entries: (1) "Begin work on retainer agreements," 0.50 hours on 12/17/2003; (2) "Finish retainer agreements, send to clients," 1.00 hours on 12/18/2003; (3) "Discuss retainer with Florida Native Plant Society," 0.50 hours on 12/18/2003; (4) "Discussed retainer with Florida Native Plant Society," 0.25 hours on 12/19/2003; (5) "E-mail to SC about retainer agreement," 0.25 hours on 12/29/2003; (6) "Read response from SC, address concerns," 0.50 hours on 1/2/2004; (6) "Review/revise retainer for Sierra Club," 0.25 hours on 1/5/2004; (7) "Talk with local SC about retainer agreement, write e-mail to national," 0.75 hours on 1/5/2004; (8) "Review/revise retainer for Sierra Club," 0.50 hours on 1/5/2004; (9) "Discuss retainer with Sierra Club," 0.50 hours on 2/8/2004; (10) "Review/revise retainer for Sierra Club," 0.25 hours on 2/9/2004; (11) "Discuss retainer with Sierra Club," 0.50 hours on 2/18/2004; (12) "Review/revise retainer for Sierra Club," 1.25 hours on 2/19/2004; (13) "Discuss retainer with Sierra Club," 0.50 hours on 3/30/2004; and  (14) "Final retainer with Sierra Club," 0.75 hours on 4/1/2004. Doc. No. 62 ex. 2.

FWS seeks a reduction of 2.5 hours[8] worked by Murphy related to a motion to intervene that was filed by the nonparty Citizens for Resources Stewardship of Brevard, Inc., which organization sought to have FWS consider, among other things, the economic impact on citizens and property owners during its assessment of whether a critical habitat should be designated for the Florida scrub-jay. Doc. No. 16. FWS filed a response to the motion to intervene stating, "Federal Defendants do not oppose or support intervenor applicant's (Citizens for Resources Stewardship of Brevard, Incorporated) Motion to Intervene . . . ." Doc. No. 20. FWS did not file anything else related to the motion to intervene, nor does it appear to have taken any action that undermined its neutrality with respect to the motion. The motion to intervene was denied. Doc. No. 57.

While I find no controlling law on point, I am persuaded that FWS should not be required to reimburse Sierra Club and Plant Society for the attorneys' fees incurred in opposing the motion for intervention. The positions of FWS and Citizens for Resources Stewardship of Brevard, Inc. were not aligned, and FWS' position was neutral on the question of intervention. Thus, because FWS was not responsible for, and did not benefit from, the proposed intervention, it should not be required to compensate Sierra Club and Plant Society for the time expended by their attorneys in opposing the motion to intervene. *See Miccosukee Tribe v. United States*, No. 950533CIVSAVISTURNOF, 1999 WL 33320443, at * 4 (S.D. Fla. Apr. 16, 1999); *Natural Res. Def. Council v. Envtl. Prot. Agency*, 595 F. Supp. 65, 70 n.1 (D.D.C. 1984), *aff'd*, 801 F.2d 457 (D.C. Cir. 1986). Therefore, I find that Murphy's hours should be reduced by 2.5 hours.

    3.    *Time Spent on Motion for Summary Judgment.*

---

[8] This includes the following time entries: (1) "Opposition to intervention," 0.75 hours on 7/22/2004; (2) "Opposition to intervention," 1.25 hours on 7/23/2004; and (3) "Responses to Complaint in Intervention," 0.50 hours on 8/30/2004. Doc. No. 62 ex. 3.

FWS contests a number of hours that the attorneys for Sierra Club and Plant Society spent working on a motion for summary judgment, which was filed in this case but never resolved. Doc. No. 38; Doc. No. 62 at 8. Specifically, FWS takes issue with 34.75 hours May worked, 9.25 hours Stuhltrager worked, 36 hours Murphy worked, and 52.25 hours interns worked. Doc. No. 62 at 8.[9] FWS objects to these hours on the basis that counsel for Sierra Club and Plant Society unnecessarily incurred them after they knew that this case would likely settle at mediation.

Judge Antoon ordered this case to mediation in the Case Management and Scheduling Order. Doc. No. 36. In this Order, Judge Antoon directed that the parties complete mediation by November 12, 2004. *Id.* The summary judgment motion was filed on October 5, 2004. Doc. No. 38. FWS contends that Sierra Club and Plant Society filed the motion in an attempt to avoid attending mediation, but it offered no evidence in support of that contention. Doc. No. 64 at 8.

I find no authority for the notion that a party should refrain from working on a dispositive motion simply because a case might settle or has been ordered to mediation. There is no evidence that Sierra Club and Plant Society were somehow on notice that the settlement of this case was imminent or that discovery had not progressed sufficiently to merit their attorneys' working on the motion for summary judgment. Furthermore, the filing of a motion for summary judgment is recited in the settlement agreement, which is an indication that the motion for summary judgment may have been one of the events that supported settlement of the case, so that FWS would not incur the cost of responding to the motion. For all of these reasons, I find that Sierra Club and Plant Society should be compensated for the time spent on the motion for summary judgment.

4. *Excessive and Duplicative Hours Generally.*

---

[9] I note that Sierra Club and Plant Society only seek compensation for 28.5 hours that interns worked on all matters.

FWS objects to hours sought by Sierra Club and Plant Society that it claims represent excessive and duplicative work given the straightforward nature of the legal issues involved in this case. Doc. No. 64 at 8. Specifically, FWS contends that "Plaintiffs should not be compensated for three attorneys and a team of interns." *Id.* Furthermore, argues FWS, in light of the fact that Murphy and Stuhltrager were lead counsel for the plaintiffs in this case, the amount of time May spent supervising them was excessive, because this is a "section 4 deadline case that required very little expertise." *Id.* at 8-9. Finally, FWS contends that the government should not be forced to pay for time spent by student interns conducting background research to familiarize themselves with the areas of the law involved in this case. *Id.* at 9. FWS acknowledges that Sierra Club and Plant Society seek compensation for fewer hours than their interns actually worked but, nevertheless, contends that they should not be compensated for any intern work. *Id.*

"Redundant hours generally occur where more than one attorney represents a client. There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Norman*, 836 F.2d at 1301-02. Attorneys' fee awards may include compensation for work performed by non-lawyers, as long as that work is of the sort that a lawyer typically would perform. *Shealy v. City of Albany*, 137 F. Supp. 2d 1359, 1378 (M.D. Ga. 2001). Indeed, as the *Shealy* court explained, "[i]t is even advisable . . . that a senior attorney seek the assistance of a younger, less-experienced and less expensive attorney to help research and draft" court papers. *Id.*

Regarding background research, reasonable hours can include time an attorney spends familiarizing herself with an area of the law, so long as the underlying lack of expertise is reflected in both the attorney's hourly rate and the number of hours spent on the background research. *Lambert v. Fulton County*, 151 F. Supp. 2d 1364, 1370 (N.D. Ga. 2000) (citing *City of Riverside v.*

*Rivera*, 477 U.S. 561, 573 n.6 (1986)). For instance, in *Mallory v. Harkness*, the United States District Court for the Southern District of Florida awarded attorneys' fees for time an attorney spent conducting extensive background research to familiarize himself with a particular area of law. 923 F. Supp. 1546, 1556 (S.D. Fla. 1996). However, the *Mallory* court reduced the hourly rate of the attorney for the hours spent conducting background research from $275 to $200 to reflect his lack of expertise. *Id.*

In the present case, it appears that Sierra Club and Plant Society generally have exercised good billing judgment. They represent that they do not seek reimbursement for 42 hours of work by the interns. Reviewing the itemized statement of work performed by the interns, I find that the research done by the interns regarding the motion for summary judgment was appropriate and that the amount of time expended on these tasks was not unreasonable. I concur with FWS, however, that it should not have been necessary for interns to spend .75 hours determining how out-of-state counsel can be specially admitted to appear before this Court – that information should have been readily obtained by reading the Court's local rules or talking with local counsel. Therefore, I find that the interns' time should be reduced by .75 hours.

With respect to the objection that May's time supervising other attorneys' is redundant, I have carefully reviewed the time sheets of May, Stuhltrager, Murphy, and the interns. I note that 3.25 hours was expended by May and others regarding responding to the Court's Order to Show Cause why they filed an unsigned complaint.[10] Time expended correcting an error by counsel is not reasonably paid by an opposing party. *Brother v. Miami Hotel Inv., Ltd.*, 341 F. Supp. 2d

---

[10] This includes the following time entries: (1) J. May "Discuss Show Cause Order with co-counsel," .25 hours on 3/24/2004; (2) J. May "Review Reply to Show Cause Order," .50 hours on 3/25/2004; (3) J. Stuhltrager, "Draft Reply to Show Cause Order," 1.50 hours on 3/25/2004; and (4) J. Stuhltrager, "Order to Show Cause Response," 1.00 hours on 3/25/2004. Doc. No. 62 exs. 1 & 2.

1230, 1238 (S.D. Fla. 2004). Accordingly, I recommend that May's time be reduced by .75 hours and Stuhltrager's time be reduced by 2.5 hours.

In all other respects, I find that May's time was reasonably expended and did not duplicate the work of other attorneys. May participation's with other attorneys in the drafting and editing of documents, including the proposed settlement agreement, exceeds mere supervision or file review. Therefore, I find that FWS' objections to all time billed by May are not well taken.

     5.    *Limited Success.*

FWS next contends that the lodestar should be adjusted to reflect the limited success that Sierra Club and Plant Society achieved in this case. Doc. No. 64 at 9-10. Specifically, FWS concedes that it agreed to make some of the findings sought by the plaintiffs in this case, but FWS also points out that, under the terms of the parties' settlement agreement, the plaintiffs' agreed to abandon their claims under the APA, in particular their claims regarding a critical habitat designation. *Id.* Therefore, goes FWS' argument, because it is clear that the plaintiffs forfeited some of the relief they sought in this case in exchange for FWS' concessions under the settlement agreement, the lodestar should be adjusted to reflect this limited success. In support of its argument, FWS cites authorities that discuss attorneys' fees in situations when plaintiffs did not succeed on all of their claims. FWS urges that "[t]o account for Plaintiffs' limited success on the merits, . . . the total number of attorney hours should be reduced by one-third." *Id.* at 10.

Courts may enhance or reduce the lodestar on the basis of the results attorneys obtain for their clients. *Norman*, 836 F.2d at 1302. "In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435. For example, in *Hensley*, the Supreme Court distinguished between unsuccessful claims that merit a reduction in the lodestar and those that do not on the basis of whether the claims were related to the primary relief sought by the movant:

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Id.* at 440. In sum, *Hensley* instructs that the lodestar should be subject to a "results obtained" reduction only when the unsuccessful portions of a plaintiff's claims are unrelated to aspects of the case in which the plaintiff succeeds.

In this instance, the complaint sought to have FWS make findings required by regulations with respect to the Florida scrub-jay. The settlement achieved that goal. In return, the plaintiffs agreed to dismiss with prejudice the claims that FWS' actions was untimely. The question of the timeliness of FWS' action was inextricably intertwined with the main goal of the lawsuit, that is to compel FWS to make findings regarding the Florida scrub-jay. Under these circumstances, I find that no reduction in the lodestar based on the agreement to dismiss certain claims with prejudice is appropriate. *See, e.g., Loggerhead Turtle v. County Council*, Case No. 6:95-cv-587-ORL-22DAB, Doc. Nos. 285, 288 (M.D. Fla. 2001) (declining to adjust lodestar downward when plaintiffs accomplished primary goal even though they did not obtain all the relief requested).

6. *Travel Costs.*

In their motion for costs, Sierra Club and Plant Society seek a total of $2,328.59. Doc. No. 62 ex. 5. In support of their motion, Sierra Club and Plant Society submit Murphy's affidavit and a summary of the costs incurred, their amounts, and the dates on which they were incurred. *Id.*[11]

---

[11] The detailed itemized list of costs Sierra Club and Plant Society submitted as exhibit 5 to their motion is sufficient documentation to support an award of costs. *See Johnson v. Mortham*, 173 F.R.D. 313, 319 (N.D. Fla. 1997) (explaining that conclusory explanations for travel expenses incurred are insufficient to support an award of costs for an attorney's travel expenses, but that either a detailed itemization or actual receipts could support such an award).

FWS objects only to $417.00 incurred in connection with Murphy's travel to Florida to attend the mediation in this case, and the $10.00 fee she paid to be specially admitted to appear in this Court.  FWS contends that Sierra Club and Plant Society have made no showing that they could not have obtained a local attorney to represent them in this case. Doc. No. 64 at 11.

Generally, travel costs reasonably incurred by a party's attorneys are recoverable under fee-shifting rules and statutes. *E.g., Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1299 & n.13 (11th Cir. 1999) (holding that district court did not abuse its discretion by awarding litigation-related travel expenses); *In re Multiponics, Inc.*, 622 F.2d 731, 734 (5th Cir. 1980) (affirming district court's refusal to adjust award of out-of-state attorney's travel costs to reflect those that a local attorney would have incurred).

In *Barnes*, the Eleventh Circuit addressed the question of whether out-of-state counsel could be awarded hourly rates higher than the rates in the local market.  It stated that the party seeking the higher rates bears the burden of establishing that there were no local attorneys with comparable expertise willing to handle the case.  168 F.3d at 437.  I find it reasonable also to require out-of-state counsel to bear the burden of proving that there were no local attorneys with comparable expertise willing to handle the case with respect to the award of travel costs and costs for admission to appear specially in this Court.  Sierra Club and Plant Society have offered no evidence that local attorneys could not be found who had sufficient expertise to represent them in this case.  Accordingly, I find that the request for costs should be reduced by $427.00.

7.  *Conclusion.*

After subtracting the number of hours that were not reasonably incurred from the total on each attorney's time sheet, I conclude that the attorneys and interns reasonably billed the following

numbers of hours: 74.50 hours for May, 40.5 hours for Stuhltrager, 77.35 hours for Murphy, and 27.75 hours for the interns.[12]

---

[12] To calculate these figures, I took the total number of hours the movants seek, doc. no. 62, and subtracted 4.25 hours of May's time and 8.25 hours of Stuhltrager's time for hours incurred working on the retainer agreement. I further subtracted 2.5 hours of Murphy's time for hours relating to the motion to intervene. I subtracted .75 hours of May's time and 2.5 hours of Stuhltrager's time for hours incurred responding to the Court's order to show cause. Finally, I subtracted .75 hours of the interns time for hours incurred researching how to make a special appearance in this Court.

Based on the foregoing, I find that the appropriate lodestar calculation is as follows:

| Attorney | Hourly Rate | Number of Hours | Lodestar |
| --- | --- | --- | --- |
| James R. May | $270.00 | 74.50 | $20,115.00 |
| James M. Stuhltrager | $190.00 | 40.50 | $7,695.00 |
| Jennifer A. Murphy | $165.00 | 77.35 | $12,762.75 |
| Interns | $85.00 | 27.75 | 2,358.75 |
| | | **Total** | $42,931.50 |

In addition, I find that Sierra Club and Plant Society should be compensated in the amount of $1,901.59, for costs related to the mediator.

## V.   RECOMMENDATION.

For the reasons stated above, I respectfully recommend that the Court GRANT in part the Petition for Attorneys' Fees and Costs, doc. no. 62, and award the plaintiffs Sierra Club and Florida Native Plant Society, Inc. $42,931.50 in attorneys' fees and $1,901.59 in costs. I further recommend that the Court DENY the motion in all other respects.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on June 16, 2005.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy